UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH W. FARR,<br>    *Plaintiff*,<br><br>    *vs.*<br><br>ROLLS-ROYCE CORP., ET AL.,<br>    *Defendants*. | )<br>)<br>)<br>)   No. 1:13-cv-01266-JMS-DKL<br>)<br>)<br>) |

**ORDER**

Plaintiff Kenneth W. Farr brought this suit against Defendants Rolls-Royce Corp., Rolls-Royce North American, Inc., Rolls-Royce North America Holdings, Inc., and Rolls-Royce North American (USA) Holdings Co. (collectively, "Rolls-Royce"), alleging violations of the Employee Retirement Income Security Act ("ERISA") and state law. [Filing No. 1.] The Court granted summary judgment to Rolls-Royce on Mr. Farr's ERISA claim and declined to exercise supplemental jurisdiction over Mr. Farr's state-law claims, and Final Judgment was entered. [Filing No. 34; Filing No. 35.] Presently pending before the Court are Rolls-Royce's Motion for Attorney Fees pursuant to 29 U.S.C. § 1132(g)(1), [Filing No. 50], Mr. Farr's Motion for Attorney Fees pursuant to 28 U.S.C. § 1927, [Filing No. 60], and Mr. Farr's Motion for Evidentiary Hearing on Rolls-Royce's Motion for Attorney Fees, [Filing No. 61].

In conjunction with the final brief on these motions, the Court was informed that Mr. Farr has initiated a Chapter 13 Bankruptcy proceeding, [Filing No. 65-1], which triggers an automatic stay in this case as to Mr. Farr, *see* 11 U.S.C. § 362. Therefore, Mr. Farr's Motion for Attorney Fees, [Filing No. 60], and Mr. Farr's Motion for Evidentiary Hearing, [Filing No. 61], are **DENIED WITHOUT PREJUDICE**. As to Rolls-Royce's Motion for Attorney Fees, Rolls-Royce seeks attorneys' fees jointly and severally from Mr. Farr and Mr. Farr's counsel. [*See* Filing No. 50 at 4; Filing No. 52 at 8.] Due to the automatic stay, Rolls-Royce's request for attorneys' fees

from Mr. Farr is **DENIED WITHOUT PREJUDICE**. For the reasons explained below, Rolls-Royce's request for attorneys' fees from Mr. Farr's counsel is **DENIED WITH PREJUDICE**.

## I.
### BACKGROUND

The Court draws the following factual background from its opinion granting Rolls-Royce's Motion for Summary Judgment. [Filing No. 34.]

Mr. Farr was employed by Rolls-Royce for over sixteen years, from 1994 to 2011. [Filing No. 25-1 at 2; Filing No. 32-1 at 1.] During his employment, Rolls-Royce offered all "Legacy Employees," such as Mr. Farr, an incentive payment to transition from the "EPO/PPO" health benefit plan to a high-deductible health benefit plan (the "Incentive Program"). [Filing No. 25-1 at 3.] The Incentive Program offered Legacy Employees a lump sum payment of "up to $75,000.00 based on years of credited service." [Filing No. 32-2 at 1.] The payment for a particular employee depended on the number of years the employee had worked for Rolls-Royce multiplied by an amount corresponding to the year during which the employee agreed to transition to the high-deductible plan ($2,500 in 2011; $1,250 in 2012; $1,000 in 2013). [Filing No. 32-2 at 1.] On August 9, 2011, Mr. Farr signed a document agreeing to take part in the Incentive Program. [Filing No. 32-1 at 5.] Based on his sixteen years of service, Mr. Farr was entitled to $40,000 under the Incentive Program. [Filing No. 32-1 at 5.] Rolls-Royce never paid Mr. Farr any money pursuant to the Incentive Program. [Filing No. 32-1 at 2.]

Mr. Farr was terminated by Rolls-Royce, and following his termination, brought the instant suit to recover the $40,000 he maintained he was owed under the Incentive Program. [Filing No. 1.] Rolls-Royce moved for summary judgment on Mr. Farr's claims, arguing that the Incentive Program was not an ERISA plan and thus Mr. Farr's ERISA claim necessarily failed. [Filing No.

23.] The Court agreed, and thus granted Rolls-Royce's Motion for Summary Judgment. [Filing No. 34.]

## II.
### DISCUSSION

Mr. Farr's pending Chapter 13 bankruptcy proceeding triggered an automatic stay in this case with respect to him. *See* 11 U.S.C. § 362. Therefore, the Court only addresses whether Rolls-Royce is entitled to attorneys' fees under ERISA from Mr. Farr's counsel. Because the parties' arguments regarding the propriety of an award of attorneys' fees under ERISA from Mr. Farr or Mr. Farr's counsel are identical, the Court refers to the arguments as Mr. Farr's for simplicity's sake, even though the Court decides the issue only with respect to Mr. Farr's counsel.

ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Rolls-Royce argues that it is entitled to attorneys' fees pursuant to § 1132(g)(1), [Filing No. 52; Filing No. 58], while Mr. Farr maintains that § 1132(g)(1) is inapplicable, [Filing No. 57]. First, the parties dispute whether fees can be awarded pursuant to ERISA given that the Court found that it lacked subject-matter jurisdiction over Mr. Farr's ERISA claim. Second, even if fees can be awarded under § 1132(g)(1), the parties dispute whether fees are warranted in this case. The Court addresses each of the arguments in turn.

    **A.**    **The Court's Decision Regarding Mr. Farr's ERISA Claim was a Decision on the Merits; Therefore Rolls-Royce can Pursue Fees under § 1132(g)(1)**

Mr. Farr contends that Rolls-Royce cannot seek fees under § 1132(g)(1)—which applies only to "any action under this subchapter"—because the Court determined that it lacked subject-matter jurisdiction over Mr. Farr's ERISA claim. [Filing No. 57 at 5-8.] Rolls-Royce responds that the cases cited by Mr. Farr in support of his argument were decided before the Supreme

Court's decision in *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), where, according to Rolls-Royce, the Supreme Court held that a party need only achieve "some success on the merits" to be eligible for fees under § 1132(g)(1). [Filing No. 58 at 6-17.]

In assessing these arguments, the Court must first explore the effect of the Court's decision regarding Mr. Farr's ERISA claim. As Mr. Farr correctly points out (and Rolls-Royce repeatedly ignores), the Court determined that it did not have subject-matter jurisdiction over Mr. Farr's ERISA claim. [Filing No. 34 at 12 ("Rolls-Royce's Incentive Program does not constitute an ERISA plan, and thus the Court does not have subject-matter jurisdiction over Mr. Farr's ERISA claim.").] But as the Court explains below, this decision was in error. The Court's conclusion that Rolls-Royce's Incentive Program was not an ERISA plan was a decision on the merits of Mr. Farr's ERISA claim, rather than a decision regarding subject-matter jurisdiction.

The Seventh Circuit previously treated the presence of an ERISA plan as "'an essential precursor to federal jurisdiction'" such that a decision by a federal court that an agreement or contract is not an ERISA plan establishes that the court does not have subject-matter jurisdiction. *See Cvelbar v. CBI Illinois, Inc.*, 106 F.3d 1368, 1373 (7th Cir. 1997) (quoting *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 510 n.2 (7th Cir. 1993)). But following the Supreme Court's decision in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), the Seventh Circuit recognized that *Steel Co.* abrogated the holding in *Cvelbar*, and held that the absence of a statutory element requires dismissal for failure to state a claim rather than for lack of subject-matter jurisdiction. *International Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 430 (7th Cir. 1998); *see id.* at 431 (noting that *Steel Co.* required the Court to hold that district courts have jurisdiction to decide whether the conduct at

issues falls within a federal statute, "despite the language in . . . *Cvelbar* to the contrary"). As the Seventh Circuit explained in *Rabine*:

> [T]he power of a federal court to act with respect to a CBA, or an ERISA benefits plan, depends critically upon the question whether that agreement or plan has been brought within the federal regulatory structure or not. If not, then a federal court, as one institution of the federal government, has no power to resolve a dispute regarding that agreement or plan. But if a party makes an arguable, but ultimately unsuccessful claim for coverage, a federal court does have the power to make the coverage determination, although the result may simply be a decision to dismiss for failure to state a claim.

*Id.* at 431. Here, Mr. Farr made an "arguable, but ultimately unsuccessful claim" that the Incentive Program was an ERISA plan, and therefore the Court's grant of summary judgment in favor of Rolls-Royce was a decision on the merits, rather than a decision that the Court lacked jurisdiction.[1] *Id.*

Given that the Court ruled on the merits of Mr. Farr's ERISA claim, the Court need not wrestle with Mr. Farr's argument that the lack of subject-matter jurisdiction precludes an award of fees under § 1132(g)(1). In fact, the Seventh Circuit has affirmed a district court's dismissal of an ERISA claim—concluding that "ERISA has nothing to do with this case"—yet still analyzed whether the defendants were entitled to fees under § 1132(g)(1). *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wis.*, 657 F.3d 496, 505-07 (7th Cir. 2011). This further demonstrates that, even if there are no viable ERISA claims remaining in a suit, a party may still be entitled to attorneys' fees pursuant to § 1132(g)(1).

---

[1] The Court notes that some relatively recent Seventh Circuit authority relies on *Cvelbar* to state that the conclusion that no ERISA plan exists deprives the Court of subject-matter jurisdiction. *See Adono v. Wellhausen Landscape Co., Inc.*, 258 Fed. Appx. 12, 15 (7th Cir. 2007) ("[I]f there were no plan under ERISA, we would not have subject matter jurisdiction to hear the[ ERISA] claims.") (citing *Cvelbar*, 106 F.3d at 1373). But given that this authority is non-binding (as the decision is unpublished), the Court will follow *Rabine*.

The Court must therefore turn next to whether Rolls-Royce is entitled to fees under § 1132(g)(1).

### 2. Attorneys' Fees Pursuant to § 1132(g)(1)

Pursuant to § 1132(g)(1), fees may be awarded to a party who achieves "some success on the merits." *Hardt*, 560 U.S. at 255. A party meeting this standard is "eligible for fees," and then the Court "must determine whether fees are appropriate." *Kolbe & Kolbe*, 657 F.3d at 505; *see Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 494 (7th Cir. 2011). There are "two tests for analyzing whether attorney fees should be awarded to a party in an ERISA case." *Kolbe & Kolbe*, 657 F.3d at 505. The Seventh Circuit set out the two tests as follows:

> The first test looks at the following five factors: 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions. The second test looks to whether or not the losing party's position was substantially justified. In any event, both tests essentially ask the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent? In determining whether the losing party's position was 'substantially justified, the Supreme Court has stated that a party's position is justified to a degree that could satisfy a reasonable person.

*Id.* at 505-06 (citations and quotation marks omitted). The Seventh Circuit has "affirmed the use of both tests post-*Hardt*." *Temme v. Bemis Co., Inc.*, 762 F.3d 544, 550 (7th Cir. 2014) (citing *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 915 (7th Cir. 2013); *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1090-91 (7th Cir. 2012)).

The parties do not dispute that Rolls-Royce achieved "some success on the merits." *Hardt*, 560 U.S. at 255. After all, the Court held that Rolls-Royce was entitled to summary judgment on Mr. Farr's lone ERISA claim, [Filing No. 34 at 14], and the "some success" standard is satisfied merely if "the court can fairly call the outcome of the litigation some success," *Hardt*, 560 U.S. at

255. Rolls-Royce's complete success on Mr. Farr's ERISA claim certainly meets this standard. Therefore, Rolls-Royce is "eligible for fees" under § 1132(a), *Kolbe & Kolbe*, 657 F.3d at 505, and the Court must address next whether an award of attorneys' fees is appropriate.

To make this determination, Mr. Farr maintains that the Court should apply the "substantially justified" test because it is the more appropriate test when assessing whether a defendant is entitled to attorneys' fees. [Filing No. 57 at 8 (citing *Chicago Painters & Decorators Pension v. Karr Bros., Inc.*, 755 F.2d 1285, 1292 (7th Cir. 1985)).] Rolls-Royce agrees that this is the appropriate test in this case. [Filing No. 58 at 18.] Because (1) the parties agree that the "substantially justified" test should be applied in this case; (2) the Court does not have sufficient information to thoroughly analyze all five factors of the first test; and (3) "both tests essentially ask the same question," *Kolbe & Kolbe*, 657 F.3d at 506, the Court will utilize the "substantially justified" test to determine whether Rolls-Royce is entitled to attorneys' fees. *See also Huss v. IDM Medical & Dental Plan*, 418 Fed. Appx. 498, 512 (7th Cir. 2011) ("A five-factor test may inform the court's analysis, but the factors in the test are used to structure or implement, rather than to contradict, the substantially justified standard . . . as the bottom-line question to be answered.").

The Court must determine whether Mr. Farr's position was substantially justified—that is, "justified to a degree that could satisfy a reasonable person." *Kolbe & Kolbe*, 657 F.3d at 506. Stated otherwise, a plaintiff's position is substantially justified if it was "more than non-frivolous, but something less than meritorious." *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011) (citation and quotation marks omitted). The Court must make the substantially-justified determination by taking into account "the entire litigation background." *Temme*, 762 F.3d at 551.

Rolls-Royce argues that Mr. Farr's position was not substantially justified because it had no basis in law or fact. [Filing No. 52 at 5.] Specifically, Rolls-Royce argues that the critical issue in this case—whether its Incentive Program constituted an ERISA plan—was clearly controlled by *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987), and the only case on which Mr. Farr relied to the contrary, *Collins v. Ralston Purina Co.*, 147 F.3d 594 (7th Cir. 1998), actually supported Rolls-Royce's position. [Filing No. 52 at 5-6.]

Mr. Farr responds that, based on the documentation he had at the time he initiated this case, it appeared as if the Incentive Program was an ERISA plan. [Filing No. 57 at 9.] Furthermore, Mr. Farr maintains that prior to filing suit his attorneys' research revealed *Collins*, and that *Collins* distinguished *Fort Halifax* in ways that Mr. Farr maintains supported his position that Rolls-Royce's Incentive Program was an ERISA plan. [Filing No. 57 at 9-10.]

The Court finds that Mr. Farr's position was substantially justified, and therefore Rolls-Royce is not entitled to attorneys' fees. First, Mr. Farr presents evidence regarding the information in his possession at the outset of the litigation and the research his attorneys conducted before filing the Complaint. [*See* Filing No. 57-1; Filing No. 57-2; Filing No. 57-3.] Given the limited information in Mr. Farr's possession and the fact that it potentially related to an ERISA plan, the Court finds that Mr. Farr's conduct at the outset of this case was substantially justified.

Second, the Court finds that Mr. Farr's opposition to Rolls-Royce's Motion for Summary Judgment was substantially justified. To support their respective positions regarding summary judgment, Rolls-Royce relied on *Fort Halifax* and Mr. Farr relied on *Collins*. Although the Court ultimately concluded that Mr. Farr's reliance on *Collins* was misplaced and that Rolls-Royce was entitled to summary judgment, it does not follow, as Rolls-Royce implicitly suggests, that Mr. Farr's position was not substantially justified.

The Court was required, in ruling on Rolls-Royce's Motion for Summary Judgment, to determine whether this case was more analogous to *Fort Halifax* (which held no ERISA plan existed) or *Collins* (which distinguished *Fort Halifax*). In the Court's view, what made this case distinguishable from *Collins* was the absence of any discretion on the part of Rolls-Royce to implement its Incentive Program. [*See* Filing No. 34 at 11 (concluding that *Collins* distinguished *Fort Halifax* "because the company's plan 'required it to *exercise discretion* on an ongoing basis,' and it is this exercise in discretion that required the use of an ongoing administrative scheme that was not present in *Fort Halifax*") (emphasis in original).] But this is not to say that Mr. Farr's argument that *Collins* supported his position was not substantially justified.

As Mr. Farr argued in opposing summary judgment, there were some indications—based on the language in *Collins*—that the Incentive Program was distinguishable from the program at issue in *Fort Halifax*. In *Collins*, the Seventh Circuit stated:

> By contrast [to *Fort Halifax*, the company here] faced the prospect of multiple payments to various managers, at different times and under different circumstances. [The company] could not satisfy its obligation by cutting a single check and making a 'single set of payments' to all of its managers at once. The individual retention agreements required the company to budget for the prospect of paying out disbursements of varying amounts to its managers and at varying times. Accordingly, what *Fort Halifax* was spared—the potential for "periodic demands on its assets that create a need for financial coordination and control," 482 U.S. at 12—[the company here] was not.

147 F.3d at 595-96. Many of these same distinguishing characteristics are true of Rolls-Royce's Incentive Program. The Incentive Program required Rolls-Royce to make payouts to numerous employees at different times over a three-year period, depending on which employees opted in to the Incentive Program. [*See* Filing No. 32-2 at 1.] Thus, like the company administering the program in *Collins*, Rolls-Royce (1) faced the prospect of making payments to various, and at the time unknown, employees; (2) could not satisfy its obligations by cutting a single check to all of

its employees at once; and (3) had to budget for the prospect of making payment to its employees at various times over a three-year period, which placed periodic demands on its assets that arguably required financial coordination and control. [*See* Filing No. 32-2 at 1.] Given these similarities, Mr. Farr's argument that *Collins* supported his position in this case was substantially justified.

In sum, this case presented a hotly contested legal issue that was resolved in Rolls-Royce's favor. But Mr. Farr's position to the contrary falls within the core meaning of substantially justified in that it was "more than non-frivolous, but something less than meritorious."[2] *Jackman*, 641 F.3d at 866 (citations and quotation marks omitted). If Rolls-Royce was entitled to attorneys' fees in this case, attorneys' fees would be warranted in nearly every case in which a party obtains summary judgment or dismissal of an ERISA claim. But this is not the standard under § 1132(g)(1). Instead, the Court must decide whether Mr. Farr's position was substantially justified, and for the reasons explained above, it was.

### III.
#### CONCLUSION

Rolls-Royce's Motion for Attorney Fees pursuant to 29 U.S.C. § 1132(g)(1) as it relates to Mr. Farr's counsel is **DENIED WITH PREJUDICE**. [Filing No. 50.] Due to the automatic stay triggered by Mr. Farr's pending Chapter 13 proceeding, Rolls-Royce's Motion for Attorney Fees pursuant to 29 U.S.C. § 1132(g)(1) as it relates to Mr. Farr, [Filing No. 50], Mr. Farr's Motion for

---

[2] The Court notes that some Seventh Circuit authority states that to satisfy the substantially justified test the party's position must be both substantially justified and taken in good faith rather than to harass the other party. *See, e.g.*, *Jackman*, 641 F.3d at 866; *Kolbe & Kolbe*, 657 F.3d at 506. The Seventh Circuit has also noted that "[a] district judge need not find that the party ordered to pay fees has engaged in harassment or otherwise litigated in bad faith. Language in some appellate opinions declaring 'bad faith' vital to an award under § 1132(g)(1) did not survive *Hardt*." *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011). To the extent a party's good faith, or lack thereof, continues to bear on the substantially-justified test, the Court finds that there is no evidence that Mr. Farr initiated this litigation to harass Rolls-Royce, or that his conduct during this litigation was done in anything but good faith.

Attorney Fees pursuant to 28 U.S.C. § 1927, [Filing No. 60], and Mr. Farr's Motion for Evidentiary Hearing on Rolls-Royce's Motion for Attorneys' Fees [Filing No. 61], are **DENIED WITHOUT PREJUDICE**.

February 10, 2015

*signature: Jane Magnus-Stinson*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**